Opinion issued February 18, 2010





 














In The
Court of Appeals
For The
First District of Texas







NO. 01-07-00611-CR
____________

JAIME LARA, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1029700
 

 
 
MEMORANDUM OPINION
            A jury found appellant, Jaime Lara, guilty of the offense of aggravated robbery
and assessed his punishment at confinement for fifteen years.


 In two points of error,
appellant contends that trial court erred in denying his motion to suppress evidence,
not instructing the jury to disregard illegally obtained evidence,


 and admitting
hearsay evidence.
          We affirm.
Background
The complainant, Chris Saunders, testified that in the early morning hours of
May 29, 2005, as he was getting out of his car in his apartment complex parking lot,
a green Suburban pulled up behind him and blocked his car. Four men got out of the
Suburban and ran toward the complainant, who jumped back into his car. Appellant
smashed his window with a crowbar and violently yelled, “Give me your money!” 
Appellant repeatedly hit the complainant with the crowbar. The complainant said
that he had no money, pulled some papers out of his pants’ pocket, and threw them
out of the window. The four men scrambled after the papers but, when they realized
that the papers were not money, returned to drag the complainant out of his car and
continued beating him. When the complainant saw an AK-47 pointed at him, he
pleaded with the men not to shoot him. He then ran away, and the assailants got back
into the Suburban and drove off. 
Terrance Deon Thompson testified that within an hour of the robbery of the
complainant, as he was getting out of his car in his apartment complex parking lot,
he was approached by appellant, who was holding a “Rambo-type” gun and said,
“Okay, motherfucker. Give me your wallet.” Thompson explained that as he reached
for his wallet, appellant told him to look down. Two more attackers then approached
Thompson from behind. One hit him with a metal baseball bat. The other had a
crowbar. The attacker with the bat demanded Thompson’s keys, which he turned
over. The attackers left, and Thompson heard a shot as they ran towards their vehicle. 
Harris County Sheriff’s Detective R. Minchew testified that he investigated
several robberies that occurred in Harris County from the early morning hours of May
28, 2005 to the early morning hours of May 29, 2005. He showed to the complainant
and Thompson a video line-up and two photographic line-ups prepared by the
Houston Police Department (“HPD”). The video line-up included appellant, but
neither photographic line-up contained appellant’s photograph. Minchew explained
that six out of the twelve individuals robbed, including the complainant and
Thompson, identified appellant as their attacker from the video line-up.
HPD Homicide Detective S. Anderson testified that she investigated several
robberies that occurred in the city of Houston from the early morning hours of May
28, 2005 to the early morning hours of May 29, 2005. After Anderson obtained
permission from the owner of the green Suburban, she searched it and found an
aluminum bat with “dents and glass fragments” under the front passenger’s seat. She
also recovered a crowbar from the front porch of the owner’s apartment. Anderson
noted that police recovered a 7.62 by 39 millimeter shell casing from the scene of one
of the robberies.
Over defense objection, HPD Officer M. Flores testified that he arrested
appellant after he had received a “general broadcast” over his patrol car radio to look
out for a “white Monte Carlo.” He explained that as he was driving his unmarked
patrol car, he saw a white Monte Carlo and ran the license plate number on his
computer, which revealed that the car was a “suspicious vehicle with a caution text
for possible robbery, an AK-47 was used.” Flores followed the car and called for
assistance from officers in marked patrol cars. Two such officers responded and
attempted to stop the white Monte Carlo. Flores explained that the driver of the car
“acted like [he] was going to stop at first . . . and when the officers tried to open the
door and get [out of their cars] and approach, the vehicle took off.” Flores noted that
appellant was the driver of the white Monte Carlo, and, after he drove a little farther,
he stopped the car. Appellant and one of the two other passengers then jumped out
of the car and ran. The passenger stopped running when ordered to do so, and he was
arrested. However, appellant continued to run into a neighborhood. A police officer
later found appellant hiding in the carport area of a home and arrested him. Flores
explained that the police officers conducted an “inventory” of the white Monte Carlo
prior to impounding it and found inside the trunk an AK-47 semi-automatic assault
rifle and an extra clip of ammunition. The officers found another clip of ammunition
under the front passenger seat of the car. 
HPD Firearms Examiner Kim Downs examined the 7.62 by 39 millimeter shell
casing recovered during Detective Anderson’s investigation and determined that it
had been fired from the AK-47 recovered from the trunk of the white Monte Carlo.
The trial court admitted the AK-47and the ammunition into evidence over
appellant’s objection and denied his motion to suppress, in which he argued that the
AK-47 and the ammunition were seized during an illegal search.
Unlawful Seizure
In his first point of error, appellant argues that the trial court erred in denying
his motion to suppress the AK-47 and the ammunition found in the white Monte
Carlo because the police officers had no probable cause to arrest him and search the
car. He further argues that the trial court erred in not instructing the jury to disregard
this evidence. See Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005) (“In
any case where the legal evidence raises an issue hereunder, the jury shall be
instructed that if it believes, or has a reasonable doubt, that the evidence was obtained
in violation of the provisions of this Article, then and in such event, the jury shall
disregard any such evidence so obtained.”). 
A trial court’s ruling on a motion to suppress evidence will not be set aside
unless there is an abuse of discretion. Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996); Spight v. State, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st
Dist.] 2001, no pet.). We afford almost total deference to a trial court’s determination
of facts supported by the record, especially when the findings are based on the
evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). We review de novo the mixed questions of law and fact of
reasonable suspicion and probable cause. Spight, 76 S.W.3d at 765. 
Appellant first asserts that the white Monte Carlo “was pulled over without
probable cause.” However, a police officer may make a temporary investigative
detention of an individual if the officer has reasonable suspicion that some activity
out of the ordinary is or has occurred, some suggestion to connect the detainee with
the unusual activity, and some indication that the activity is related to a crime. Terry
v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); Stone v. State, 703 S.W.2d 652,
654 (Tex. Crim. App. 1986). The test for reasonable suspicion is a factual one and
is made and reviewed by considering the totality of the circumstances at the time of
the detention. Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). Such
reasonable suspicion may arise from a police broadcast based on reliable information
furnished by an otherwise credible, known private citizen whose only contact with
the police or criminal activity results from having witnessed a criminal act. 
Rodriguez v. State, 975 S.W.2d 667, 676 (Tex. App.—Texarkana 1998, pet. ref’d). 
Likewise, an officer’s decision to check a license plate number that returns
information that a vehicle has been reported stolen creates reasonable suspicion for
the officer to detain the driver and further investigate. Kelly v. State, 721 S.W.2d
586, 586–87 (Tex. App—Houston [1st Dist.] 1986, no pet.). 
Officer Flores requested that other officers in the marked patrol cars stop the
white Monte Carlo after he had received a general broadcast over his patrol car radio
to look out for a “white Monte Carlo,” run the license plate number of the car on his
computer, and received information that the car had possibly been involved in a
robbery in which an AK-47 had been used. This evidence supports the trial court’s
implied finding that the officers had reasonable suspicion that the individuals in the
white Monte Carlo had been involved in criminal activity and to detain them to
further investigate. See id. 
Appellant next asserts that his arrest and the search of the white Monte Carlo
were made without probable cause. In Texas, a warrantless arrest is lawful when
probable cause for the arrest exists and at least one of the statutory exceptions to the
warrant requirement is met. McGee v. State, 105 S.W.3d 609, 614 (Tex. Crim. App.
2003). One such exception is that a peace officer may arrest an offender without a
warrant for any offense committed in his presence or within his view. Tex. Code
Crim. Proc. Ann. art. 14.01 (Vernon 2005); State v. Steelman, 93 S.W.3d 102, 107
(Tex. Crim. App. 2002). The test for probable cause for a warrantless arrest under
article 14.01(b) is “whether at that moment the facts and circumstances within the
officer’s knowledge and of which he had reasonably trustworthy information were
sufficient to warrant a prudent man in believing that the arrested person had
committed or was committing an offense.” Steelman, 93 S.W.3d at 107 (quoting
Beverly v. State, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)). Thus, a warrantless
arrest may be made if an officer has probable cause to believe that a person has
committed or is committing a crime, where the probable cause arises from matters
observed by the arresting officer. Butler v. State, 990 S.W.2d 298, 301 (Tex.
App.—Texarkana 1999, no pet.). In Texas, a person commits an offense “if he
intentionally flees from a person he knows is a peace officer attempting lawfully to
arrest or detain him.” Tex. Penal Code Ann. § 38.04 (Vernon 2003). 
Appellant initially appeared to stop the white Monte Carlo when the officers
in the marked patrol cars attempted to lawfully detain him for further investigation. 
However, appellant then drove off before the officers could investigate. He
subsequently stopped the car a short distance away, got out of the car, and ran from
the police officers. This flight from the attempted lawful detention by police officers
constituted the commission of an offense by appellant in the presence the officers. 
See Butler, 990 S.W.2d at 301. 
As to appellant’s assertion that the AK-47 and ammunition were seized from
the trunk of the white Monte Carlo during an unlawful search, we note that a peace
officer’s inventory of the contents of an automobile is permissible under both the
Fourth Amendment to the United States Constitution and Article I, section 9 of the
Texas Constitution if conducted pursuant to a lawful impoundment. South Dakota
v. Opperman, 428 U.S. 364, 375-76, 96 S. Ct. 3092, 3100 (1976); Benavides v. State,
600 S.W.2d 809, 810 (Tex. Crim. App.1980); Lagaite v. State, 995 S.W.2d 860, 865
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). Inventories protect (1) the owner’s
property while it is in custody, (2) the police against disputes over lost or stolen
property, and (3) the police from potential danger. Opperman, 428 U.S. at 369, 96
S. Ct. at 3097. Inventories must be conducted in good faith pursuant to reasonable
standardized police procedures. Colorado v. Bertine, 479 U.S. 367, 374, 107 S. Ct.
738, 742 (1987). An inventory search is reasonable and lawful only if conducted for
the purposes of an inventory and may not be used by police officers as a ruse for
general rummaging in order to discover incriminating evidence. Garza v. State, 137
S.W.3d 878, 883 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d); see Florida v.
Wells, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635 (1990). 
Officer Flores testified that the officers conducted an inventory of the white
Monte Carlo after appellant was arrested but before the car was towed because
“whenever we take possession of a vehicle from a suspect . . . we have to list the
property on a tow slip . . . before we can have it towed off, that way their property is
protected. We have what’s in there, if something comes up missing we can say what
was in the vehicle at the time.” This testimony supports the trial court’s implied
finding that the AK-47 and the ammunition was seized during a lawful inventory of
the white Monte Carlo. See Garza, 137 S.W.3d at 883. 
Accordingly, we hold that the trial court did not err in denying appellant’s
motion to suppress the evidence seized from the white Monte Carlo. 
Appellant further contends that the trial court erred in not instructing the jury
to disregard illegally obtained evidence. However, the record does not demonstrate
that a factual dispute existed as to how the evidence was obtained. The record reveals
instead that the police officers’ testimony on the matter was uncontroverted. Because
the evidence presented at trial did not raise a fact issue as to whether the evidence was
obtained lawfully, we hold that the trial court did not err in not including an article
38.23 instruction in the jury charge. See Kelly, 721 S.W.2d at 587. 
We overrule appellant’s first point of error.
Hearsay
In his second point of error, appellant argues that the trial court erred in
admitting Officer Flores’s testimony that he was told through a “general broadcast”
over his police radio to look out for a “white Monte Carlo” because the testimony
concerned inadmissible hearsay. See Tex. R. Evid. 802. 
“‘Hearsay’ is a statement, other than one made by the declarant while testifying
at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” 
Tex. R. Evid. 801(d). However, an extrajudicial statement that is offered to show
what was said rather than for the truth of the matter asserted is not hearsay. Dinkins
v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). Officer Flores’s testimony
that he heard a general broadcast to look out for a white Monte Carlo was offered to
support Officer Flores’s reasonable suspicion and decision to investigate further. 
Thus, in this context, Flores’s testimony was not hearsay. See Jones v. State, 843
S.W.2d 487, 499 (Tex. Crim. App. 1992), abrogated on other grounds, Maxwell v.
State, 48 S.W.3d 196 (Tex. Crim. App. 2001); McCreary v. State, 194 S.W.3d 517,
521 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Accordingly, we hold that the
trial court did not err in admitting Flores’s testimony.
We overrule appellant’s second point of error.Conclusion
We affirm the judgment of the trial court.



Terry Jennings
Justice

Panel consists of Justices Jennings, Hanks, and Bland.

Do not publish. Tex. R. App. P. 47.2(b).